414 P.2d 734

**STATE of Arizona, Appellee,**

**v.**

**Dwayne Lee GUNTER, Appellant.**

**No. 1613.**

Supreme Court of Arizona.

In Banc.

May 18, 1966.

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., Robert K. Corbin, Maricopa County Atty., for appellee.

Claude W. Olney, Phoenix, for appellant.

BERNSTEIN, Vice Chief Justice.

Defendant, Dwayne Lee Gunter, was charged with and convicted for the crime of robbery, in violation of A.R.S. §§ 13–641 and 13–643, in the Superior Court of Maricopa County on March 12, 1965. On March 23, 1965, he was sentenced to not less than five nor more than seven years in the Arizona State Prison. Defendant appeals therefrom and the only issue before this court is whether his conviction was based upon illegally obtained evidence. The disposition of this issue is dependent upon our determination as to whether there was cause, in view of the fact there was no search warrant, to detain defendant's vehicle upon the highway prior to the search which led to the discovery of incriminating evidence offered at trial.

The facts establish that on the evening of October 31, 1963, the Four-Fifths Liquor Store at 7027 North 27th Avenue, Phoenix, was held up. The liquor store clerk, the lone night employee, testified that on the night in question a young man with an unusual sawed-off shotgun entered the store and at gunpoint tied him up. In addition to looting the cash register the robber took the clerk's billfold which contained, amongst other things, his social security card.

At trial the liquor store clerk was unable to positively identify defendant as being the man who robbed him, but did identify the unusual sawed-off shotgun found in defendant's possession, as being the same weapon used on the night of the robbery. It was also brought out at trial that defendant was in possession of the liquor store clerk's social security card when he was taken into custody by the New Mexico State Police.

Two members of the New Mexico State Police appeared for the prosecution. They testified to the same facts based upon their actual involvement in the incident and defendant's oral confession. According to their testimony defendant had pulled into a gas station on November 3, 1963, and in an attempt to move his sawed-off shotgun from the car seat and hide it on the floor the gun discharged firing a shell into the car door. The station attendant called

the police about the incident and described the car and reported its license number.

Officer Melvin L. West stopped defendant at 9:00 o'clock on the morning of November 3, 1963, two miles west of Roswell, New Mexico on highway 70–380. Officers Jerry Wood and J. R. Funk arrived at the scene within a matter of seconds after Officer West arrived.

When Officer West immediately asked defendant for his driver's license and vehicle registration card defendant answered he had none. When questioned about the bulge in his pockets defendant produced four 110 gauge shotgun shells.

The following are the relevant facts as to what transpired after the defendant was stopped:

"Q Now, at this time was this person under arrest, Officer West?

"A No, he wasn't.

"Q Now, what, if anything, happened after he handed you the shotgun shells?

"A Captain Funk and Officer Wood walked up to the side of the car and I noticed they pulled out a gun, shotgun."

\* \* \* \* \* \*

"Q And then at that time did you place him under arrest?

"A No we took him down to the State Police Office."

\* \* \* \* \* \*

"Q How was this individual transported from the location on the highway to Roswell?

"A He was transported in my car, and Captain Funk drove the car that he had been driving down to the office."

\* \* \* \* \* \*

"Q What did you book this individual for?

"A We booked him on not having a registration for the car proving ownership of the car and his driver's license at the time. We were primarily interested in ownership of the car and also the gun he had in the car."

As to the discovery of the shotgun Officer J. R. Funk testified:

"A Officer Wood went to one side of the car and I went to the other side of the car, the white car, and we observed the butt end of a gun partially under the seat. Officer Wood reached in the car, removed the gun, laid it on the hood of the white car and immediately unloaded the gun."

\* \* \* \* \* \*

"Q Now, could you see this gun from the outside of the car?

"A Yes, sir. You could see the butt sticking out underneath the front seat."

Defendant assigned as error that the New Mexico State Police had no right to stop and search him without obtaining

a warrant since in New Mexico there is no law making it a felony to carry a loaded weapon in an automobile. He further assigned as error that the carrying of a loaded weapon is only a misdemeanor [1] as is negligently discharging a weapon [2] and that before an arrest may be made for a misdemeanor it must be committed in the presence of the arresting officer.

We are unable to find, and counsel has not called to our attention, any New Mexico statutes relating to arrest similar to our own A.R.S. § 13–1403.[3] However, we are in agreement that our statute is a codification of the common law. On arrests the United States Supreme Court has said:

"But we are pressed with the argument that if the search of the automobile discloses the presence of liquor and leads under the statute to the arrest of the person in charge of the automobile, the right of seizure should be limited by the common-law rule as to the circumstances justifying an arrest without a warrant for a misdemeanor. The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence. Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458; John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874. The rule is sometimes expressed as follows:

'In cases of misdemeanor, a peace officer like a private person has at

---

1. 40A–7–2. Unlawful carrying of a deadly weapon.—Unlawful carrying of a deadly weapon consists of carrying a concealed loaded firearm or any other type of deadly weapon anywhere, except in the following cases: * * *
   Whoever commits unlawful carrying of a deadly weapon is guilty of a petty misdemeanor. New Mexico Statutes 1953.
2. 40A–7–3. Negligent use of a weapon.—Negligent use of a weapon consists of:
   A. unlawfuly discharging a firearm in the proximity of a building or into any building or vehicle so as to knowingly endanger a person or his property; * * *
   C. endangering the safety of another or his property by handling or using a firearm or other deadly weapon in a negligent manner.
   Whoever commits negligent use of a weapon is guilty of a petty misdemeanor. New Mexico Statutes 1953.

3. § 13–1403. Arrest by officer without warrant
   A peace officer may, without a warrant, arrest a person:
   1. When the person to be arrested has committed a felony or misdemeanor in his presence. If the arrest is for a misdemeanor, the arrest shall be made immediately or on fresh pursuit.
   2. When the person to be arrested has committed a felony, although not in the presence of the officer.
   3. When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it.
   4. When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it.

common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.' Halsbury's Laws of England, vol. 9, part. III, 612." Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

New Mexico follows the common law on arrests under its case law:

"It will thus be seen that the legislature has not broadened the power to arrest without warrant even in the presence of an officer for misdemeanors which are mere peccadillos." Cave v. Cooley, 48 N.M. 478, 152 P.2d 886.

As to the officers' reasons for stopping defendant upon the highway Officer Funk testified as follows:

"Q Now, for the record, Captain Funk, why were you trying to stop this vehicle?

"A We had a radio message on it.

"Q What was that radio message?

"A That there was a young man driving a car who discharged a shotgun in the front seat of the car some forty miles, approximately forty miles west at a service station.

"Q And did your radio message give a description of that gun?

"A Yes, sir.

"Q What was that?

"A Said it was a short, shoulder gun; all that we knew.

"Q And did you have a description of the vehicle?

"A Yes.

"Q Did you have the license number?

"A Yes, sir."

In Rios v. United States, 364 U.S. 253, 261, 80 S.Ct. 1431, 1436, 4 L.Ed.2d 1688, the court said:

"[A] seizure can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant. Jones v. United States, 357 U.S. 493, 499, [78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514]; United States v. Jeffers, 342 U.S. 48, 51, [72 S.Ct. 93, 95, 96 L.Ed. 59]."

Defendant fails to recognize the valid distinction between an arrest on the one hand and police investigation on the other. Escobedo v. State of Illinois, 378 U.S. 478, 485, 492, 84 S.Ct. 1758, 1762, 1766, 12 L.Ed. 977, 982, 987; Haynes v. State of Washington, 373 U.S. 503, 519, 83 S.Ct. 1336, 1346, 10 L.Ed. 513; Spano v. New York, 360 U.S. 315, 327, 79 S.Ct. 1202, 1209, 3 L.Ed. 1265, 1274. We believe a police officer acting as a reasonable man under the circumstances may *detain and question* a

person when necessary to a proper discharge of his duties.

█ While it is often difficult to draw the line between investigation on the one hand and an arrest on the other, it will not suffice for an accused to contend that merely because investigation may lead to arrest the courts must surround investigations with the same requisites necessary for the arrest. Circumstances short of probable cause to make an arrest may still justify an investigation. Should the investigation then reveal probable cause to make an arrest, the officer may make an arrest and conduct a reasonable search incidental thereto. It strikes a balance between the individual interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified.

█ In the case before us the police had probable cause to seek out the defendant for an *explanation* as to his dangerous conduct in discharging a shotgun in a public place. Their initial conduct in halting him for investigation was not, therefore, improper. When defendant failed to produce a driver's license he had violated 64–13–49, New Mexico Statutes 1953.

"64–13–49. License to be carried and exhibited on demand.—Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same upon demand of a justice of the peace, a peace officer, or a field deputy or inspector of the division. However, no person charged with violating this section shall be convicted if he produces in court an operator's or chauffeur's license theretofore issued to him and valid at the time of his arrest."

A violation of this section is a misdemeanor under 64–13–76, New Mexico Statutes 1953. Defendant thereby committed a misdemeanor in the presence of the police and at that moment was subject to arrest. A search incident to a lawful arrest was proper.

Affirmed.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD, and McFARLAND, JJ., concur.