571 P.2d 289

The STATE of Arizona, Appellee,

v.

Jerry Hunter WILKERSON, Appellant.

No. 2 CA-CR 951.

Court of Appeals of Arizona,
Division 2.

Aug. 16, 1977.

Rehearing Denied Oct. 27, 1977.

Review Denied Nov. 15, 1977.

Bruce E. Babbitt, Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Michael P. Roca, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

The only question presented in this appeal is whether the trial court erred in denying appellant's motion to suppress narcotics found in a suitcase in the trunk of his car. Resolution of this question requires that the following two questions be answered: (1) Was the initial stop of appellant's vehicle lawful? (2) Did appellant consent to the search of his vehicle?

Two witnesses testified at the suppression hearing—the police officer who stopped appellant's vehicle and subsequently arrested him, and appellant. Their respective versions of what transpired differed in many respects and apparently the trial court, in ruling as it did, believed the police officer. According to the officer, he stopped appellant's car because he observed that the front license plate was missing. A.R.S. § 28–309 requires that the license plates assigned to a vehicle shall be attached in the front and rear and A.R.S. § 28–181 makes it a misdemeanor to fail to so display them. Thus, the officer was justified in stopping appellant. *State v. Sergheyev,* 23 Ariz.App. 494, 534 P.2d 302, rehearing denied 24 Ariz.App. 189, 536 P.2d 1081 (1975).

Appellant's second contention is that his consent to the search of the trunk of his vehicle and the suitcase located in the trunk was the product of intimidation and coercion, thus invalidating his consent. Although the burden of proof is on the state to establish by clear and positive testimony the consent was freely and intelligently given, we must view the evidence in a light most favorable in support of the ruling below. *State v. Ballesteros,* 23 Ariz.App. 211, 531 P.2d 1149 (1975). In *Ballesteros,* citing *State v. King,* 44 N.J. 346, 209 A.2d 110 (1965), we indicated the factors to be considered by the court on the issue of consent. Those tending to show that the consent was coerced are that consent was made by an individual already arrested, that consent was obtained despite a denial of guilt, that consent was obtained only after the accused had refused an initial request for consent to search, that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered, and that consent was given while the defendant was handcuffed. Among those factors tending to show the voluntariness of the consent are that consent was given where the accused had reason to believe that the police would find no contraband, that the defendant admitted his guilt before consent, and that the defendant affirmatively assisted the police officers.

Accepting the officer's testimony as true, which apparently the trial court did, the following took place: The highway patrol officer was patrolling I–10 between Marana and Tucson when he observed a gray 1958 Chevrolet headed west and noticed it had no front license plate. He crossed the median and pulled it over. Appellant got out of his car and met the officer at the side of the road. The officer asked appellant for his driver's license and appellant started to shake "uncontrollably". After briefly fumbling with his billfold, appellant told the officer that his sister had his driver's license. A field check through Phoenix revealed, however, that appellant's license had been suspended under the financial responsibility law. (This information later proved erroneous.) The officer then asked appellant if he could see the vehicle registration. Appellant removed it from the sun visor and the registration indicated that the car was registered to another per-

son. When the officer asked appellant if he knew where the front license plate was, appellant replied that it was in the trunk. The officer then asked appellant to open the trunk so he could take a look at it whereupon appellant got a screwdriver out of his car and used it to open the trunk because the lock was punched out. According to the officer, he merely requested that appellant open the trunk and appellant responded immediately.

When appellant opened the trunk, the officer saw a new car transmission, new carburetor, battery, stereo speakers, guns and miscellaneous personal items, and two suitcases. When the officer asked appellant about the transmission and battery, appellant told him he was a race car driver or stock car driver and it was part of his equipment. According to the officer, appellant volunteered the information that he was on bail for second-degree burglary and was to be sentenced the following week. In response to the officer's question as to the contents of the suitcases, appellant said they contained clothes. The officer asked him if he could look inside the suitcase whereupon appellant pulled one of the suitcases out of the trunk and as he pulled it out, the officer asked if he could open it. Appellant did so and the officer observed assorted colored bricks of marijuana, one of which was partially opened. No front license plate was found in the trunk of the car. According to the officer, he inquired as to the contents of the suitcases because "from the items I saw inside the car and inside the trunk I thought there might be more items inside the suitcases such as cameras". His reason for investigating further was "mostly because of the defendant's nervousness. He could not stand still, was very talkative." The officer was concerned that there might have been a burglary as "there were burglary items". On cross-examination, the officer testified that appellant never questioned his authority and was very cooperative.

Thus we see that appellant had not been placed in custody, his consent was not obtained despite a denial of guilt, he had not refused an initial request for consent to search, and he was not handcuffed at the time of the consent. In spite of the fact that the search resulted in a seizure of contraband which appellant must have known would be discovered, the particular circumstances would indicate voluntariness rather than involuntariness in hope of bluffing his way through. According to the officer, he had not threatened appellant in any way and appellant was not at all hesitant in responding to his requests. The totality of the circumstances justified the trial court's conclusion that appellant's consent was voluntary. *Ballesteros,* supra.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.